**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NATALIE KORNEEV,**

**Plaintiff,** **Case No.:**

**v.**

**TESLA FLORIDA, INC.,**
**a Foreign Profit Corporation,**

**Defendant.**
_______________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, NATALIE KORNEEV ("Plaintiff"), by and through her undersigned counsel, and files this Complaint for Damages and Demand for Relief against Defendant, TESLA FLORIDA, INC. ("Defendant"), and alleges as follows:

**NATURE OF CLAIMS**

1. This action seeks monetary damages and equitable relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Florida Civil Rights Act, Fla. Stat. §§ 760.01–760.11 ("FCRA").

2. Plaintiff alleges that Defendant subjected her to gender-based sexual harassment and a hostile work environment, retaliated against her for reporting that conduct, and constructively discharged her.

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3) because this action arises under Title VII.

4. This Court has supplemental jurisdiction over Plaintiff's related FCRA claims under 28 U.S.C. § 1367(a).

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District.

6. The Tampa Division is the division most directly connected to this action because Plaintiff worked for Defendant and the challenged employment practices occurred in Hillsborough County, Florida.

7. Defendant is an automotive manufacturing, sales, and service company authorized to conduct business in Florida, with its principal place of business at 1 Tesla Road, Austin, Texas 78725.

8. On or about May 19, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2025-03596. A copy of the Charge is attached as **Exhibit A**.

9. On or about June 7, 2026, Plaintiff received a Dismissal and Notice of Rights issued by the EEOC. A copy of the Notice is attached as **Exhibit B**.

10. Plaintiff commenced this action within ninety (90) days after receiving the Notice of Right to Sue.

11. All conditions precedent to Plaintiff's Title VII and FCRA claims have occurred, been performed, or been waived.

## PARTIES

12. Plaintiff is a female resident of Florida and, at all relevant times, was an "employee" within the meaning of Title VII and the FCRA.

13. At all relevant times, Defendant was an "employer" within the meaning of Title VII and the FCRA, employed fifteen (15) or more employees, and conducted business in this District.

14. Defendant may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

## FACTUAL ALLEGATIONS

15. In or about November 2024, Defendant hired Plaintiff as a Detailer.

16. Throughout her employment, Plaintiff performed her job duties in a satisfactory and competent manner and was not subject to any significant disciplinary action. Based on her experience, strong work ethic, and demonstrated proficiency, Defendant regularly assigned Plaintiff to assist in the Paint and Preparation Department. As a result of her successful performance in those assignments, Defendant promoted Plaintiff to the position of Paint Prepper.

17. Throughout her employment, Plaintiff was subjected to ongoing and unwelcome gender-based sexual harassment by Associate Collision Manager Carlos Serrano ("Mr. Serrano"). Mr. Serrano repeatedly engaged in unwelcome conduct directed at Plaintiff because of her sex.

18. Following her promotion to Paint Prepper, Plaintiff was also subjected to ongoing and unwelcome gender-based sexual harassment by Lead Paint employee Daniel Collazo ("Mr. Collazo"). Mr. Collazo repeatedly engaged in unwelcome conduct directed at Plaintiff because of her sex.

19. At all times material hereto, Plaintiff was the only female employee assigned to work in the shop area of Defendant's Service Department, a predominantly male work environment. Defendant's other female employees worked exclusively in front-office administrative positions.

20. Throughout Plaintiff's employment, Mr. Serrano repeatedly subjected her to unwelcome gender-based comments and conduct. Among other things, Mr. Serrano told Plaintiff that her coworkers were "envious" of her relationship with him, referred to Plaintiff as "his model," and discussed Plaintiff's physical appearance with Regional Manager Jarred Wages.

21. Mr. Serrano enlarged a professional photograph of Plaintiff and, despite already knowing Plaintiff, stated that he wanted to "meet" her. His conduct and comment were unwelcome and directed at Plaintiff because of her sex.

22. Mr. Serrano also told Plaintiff that she had "already distracted his employees enough." The comment was unwelcome, was directed at Plaintiff because of her sex, and insinuated that Plaintiff was responsible for distracting her male coworkers merely because she was a woman working in the shop.

23. Mr. Serrano frequently summoned Plaintiff to private, one-on-one meetings during which he made many of the unwelcome gender-based comments described above.

24. During a discussion concerning Plaintiff's promotion to Paint Prepper, Mr. Serrano intentionally stroked Plaintiff's wedding ring while it remained on her finger, making unwelcome physical contact with Plaintiff in an intimate manner. Plaintiff immediately recoiled and pulled her hand away, communicating that the contact was unwelcome.

25. Following Plaintiff's promotion, Mr. Serrano told Plaintiff, "You owe me," in a sexually suggestive manner, implying that Plaintiff was personally indebted to him for her promotion rather than having earned it because of her qualifications and job performance.

26. Following Plaintiff's promotion, Mr. Collazo repeatedly subjected Plaintiff to unwelcome gender-based comments, gestures, and physical contact. Among other things, Mr. Collazo simulated an oral sex act in Plaintiff's presence; referred to himself as "Daddy Danny" after Plaintiff asked for assistance opening a

bottle of solvent necessary to perform her job duties; told Plaintiff, "Don't tell your husband," after assisting her; and repeatedly initiated unwanted hugs despite Plaintiff making clear that the physical contact was unwelcome and directing him to stop.

27. The comments, gestures, and physical contact directed at Plaintiff by Mr. Serrano and Mr. Collazo were repeated, unwelcome, and based on Plaintiff's sex. Viewed collectively, the conduct created an intimidating, hostile, offensive, and abusive working environment and interfered with the terms and conditions of Plaintiff's employment. Similarly situated male employees were not subjected to the same or a similar pattern of sex-based comments, sexually explicit gestures, or unwelcome physical contact.

28. Following each incident of harassment, Plaintiff objected to the conduct and informed Mr. Serrano or Mr. Collazo, as applicable, that the conduct was unwelcome and should stop. Plaintiff also made contemporaneous verbal complaints concerning the harassment.

29. Notwithstanding the harassment and retaliatory conduct to which she was subjected, Plaintiff continued to perform her job duties competently and professionally. Plaintiff did so despite suffering emotional distress, humiliation, and other harm because of the conduct.

30. On or about December 22, 2024, after repeatedly reporting the harassment verbally and receiving no meaningful response or remedial action, Plaintiff submitted a formal written complaint by email to Senior Human Resources Manager Imani Myers-Ferdinand ("Ms. Myers-Ferdinand"). Plaintiff reported the gender-based sexual harassment, unwelcome physical contact, hostile working environment, and retaliatory treatment to which she had been subjected by Mr. Serrano and Mr. Collazo. A true and correct copy of the email is attached hereto as **Exhibit C**.

31. On or about December 23, 2024, Ms. Myers-Ferdinand acknowledged receipt of Plaintiff's complaint by email and advised Plaintiff that Defendant would investigate her allegations. A true and correct copy of the email is attached hereto as **Exhibit D**.

32. Between on or about December 26, 2024, and on or about February 3, 2025, Plaintiff and Ms. Myers-Ferdinand exchanged numerous emails concerning Plaintiff's complaints. Throughout those communications, Plaintiff repeatedly advised Defendant that she was experiencing significant discomfort in the workplace and feared for her safety because of the hostile "frat house/locker room" environment created and perpetuated by Mr. Serrano and Mr. Collazo. True and correct copies of the relevant emails are attached hereto collectively as **Composite Exhibit E**.

33. During Defendant's investigation, Ms. Myers-Ferdinand approved Plaintiff's leave of absence from on or about December 26, 2024, through on or about January 5, 2025. In the same correspondence, Ms. Myers-Ferdinand advised Plaintiff that, upon her return, Defendant would "update [her] reporting structure temporarily." A true and correct copy of the relevant email is attached hereto as **Exhibit F**.

34. As Plaintiff's anticipated return to work date approached, Plaintiff advised Ms. Myers-Ferdinand that she was uncomfortable returning if she would be required to continue working under the supervision of, reporting to, or remaining near Mr. Serrano and Mr. Collazo while Defendant's investigation remained pending. Plaintiff requested that her leave be extended until Defendant completed its investigation and implemented effective remedial measures.

35. During this period, Plaintiff learned that Mr. Serrano intended to terminate her employment if she did not return to work on or about January 6, 2025. Ms. Myers-Ferdinand thereafter extended Plaintiff's leave through on or about January 8, 2025, and advised Plaintiff that, upon her return, she would report to Estimator Jeff Sherwood ("Mr. Sherwood"). Upon information and belief, Mr. Sherwood remained subordinate within Defendant's management structure and reported, directly or indirectly, to Mr. Serrano. Mr. Sherwood was later promoted to Assistant Manager/Manager in Training and reported directly to Mr. Serrano.

36. On or about January 10, 2025, while Defendant's investigation remained pending, Plaintiff again notified Ms. Myers-Ferdinand that she was unwilling to return because she reasonably feared continued harassment and retaliation by Mr. Serrano and Mr. Collazo. Plaintiff further advised Defendant that she feared for her personal safety if she were required to return to work before Defendant completed its investigation and implemented effective remedial measures.

37. After several weeks passed without a resolution, Plaintiff contacted Ms. Myers-Ferdinand on or about January 28, 2025, seeking an update. Ms. Myers-Ferdinand advised only that "the concerns you have raised are still being looked into." On or about February 3, 2025, Plaintiff advised Ms. Myers-Ferdinand that she had fully cooperated with Defendant's investigation and had provided all information within her knowledge. True and correct copies of the relevant emails are attached hereto collectively as **Composite Exhibit G**.

38. After Plaintiff submitted her written complaint, Ms. Myers-Ferdinand contacted Plaintiff by telephone to discuss Plaintiff's allegations and obtain additional information concerning the gender-based sexual harassment and hostile working environment she had reported.

39. Approximately one week later, Plaintiff was contacted by another individual participating in Defendant's investigation, whose identity is presently

unknown to Plaintiff. During that conversation, Plaintiff again described the conduct underlying her complaint and reiterated the information she had provided in her written complaint and during her conversation with Ms. Myers-Ferdinand. The investigator expressed regret regarding Plaintiff's experiences and advised that Ms. Myers-Ferdinand would follow up concerning the investigation. Plaintiff had no further communications with that investigator.

40. Defendant thereafter informed Plaintiff that her complaints were "unsubstantiated." Defendant did not advise Plaintiff that it had disciplined Mr. Serrano or Mr. Collazo, permanently separated Plaintiff from them, removed them from her chain of command, or implemented any other corrective measure reasonably calculated to prevent further harassment.

41. Despite having actual notice of Plaintiff's complaints, Defendant failed to take prompt and effective remedial action reasonably calculated to end the gender-based sexual harassment, prevent its recurrence, or protect Plaintiff from further unlawful conduct.

42. After Defendant advised Plaintiff that its investigation was complete, Ms. Myers-Ferdinand informed Plaintiff that her only options were to return to the same workplace, where Mr. Serrano and Mr. Collazo remained employed and in positions of authority, or face termination if she did not return.

43. Plaintiff requested reassignment or transfer to another available position or location, including another body shop, another service center, or the new facility scheduled to open at a location closer to Plaintiff's residence. Plaintiff made these requests so that she could remain employed without being required to work in proximity to, or within the chain of command of, Mr. Serrano and Mr. Collazo.

44. Defendant denied Plaintiff's requests and maintained that her only options were to return to the same workplace or have her employment terminated. Plaintiff enjoyed her work and wished to remain employed. However, Defendant's failure to implement effective remedial measures left Plaintiff reasonably believing that returning to the same workplace location would expose her to continued harassment, retaliation, and unsafe working conditions.

45. Faced with the choice of returning to an environment Defendant had failed to make safe or losing her employment, Plaintiff reasonably believed she had no meaningful alternative but to decline to return. Defendant thereafter ended Plaintiff's employment on or about February 24, 2025.

46. Defendant's failure to remedy the reported conduct, its refusal to provide a reasonable means for Plaintiff to remain employed outside the authority or proximity of the alleged harassers, and its directive that she return to work or face termination created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

47. Plaintiff engaged in activity protected by Title VII by repeatedly opposing and reporting the gender-based sexual harassment and hostile working environment created by Mr. Serrano and Mr. Collazo, participating in Defendant's investigation of her complaints, and reporting retaliatory conduct she experienced after making those complaints.

48. Plaintiff is female and, therefore, a member of a class protected by Title VII. Plaintiff was subjected to unwelcome sex-based comments, humiliation, physical contact, and other disparate treatment because of her gender. Similarly situated male employees were not subjected to the same or similar conduct.

49. Plaintiff engaged in activity protected by the FCRA by repeatedly opposing and reporting the gender-based sexual harassment and hostile working environment created by Mr. Serrano and Mr. Collazo, participating in Defendant's investigation of her complaints, and reporting retaliatory conduct she experienced after making those complaints.

50. Plaintiff is female and, therefore, a member of a class protected by the FCRA. Plaintiff was subjected to unwelcome sex-based comments, humiliation, physical contact, and other disparate treatment because of her gender. Similarly situated male employees were not subjected to the same or similar conduct

51. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer damages, including past and future lost wages and

benefits, lost earning capacity, emotional distress, mental anguish, humiliation, inconvenience, loss of enjoyment of life, and other compensatory damages in an amount to be proven at trial.

52. Plaintiff has retained the law firm of FARAH AND FARAH, P.A. to represent her in this litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I
## GENDER-BASED (SEXUAL) HARASSMENT
## IN VIOLATION OF TITLE VII

53. Plaintiff realleges and incorporates paragraphs 1 through 52 as though fully set forth herein.

54. Plaintiff is female and a member of a class protected by Title VII.

55. Mr. Serrano and Mr. Collazo subjected Plaintiff to unwelcome gender/sex-based comments, sexually suggestive remarks, sexually explicit gestures, unwanted physical contact, and other conduct because of her gender.

56. Plaintiff subjectively regarded the conduct as unwelcome, objected to it, directed that it be stopped, and reported it verbally and in writing.

57. The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. Similarly situated male employees were not subjected to the same or similar pattern of conduct.

58. Mr. Serrano exercised supervisory authority over Plaintiff's work assignments and working conditions and, upon information and belief, possessed or effectively exercised authority to recommend, authorize, or effect tangible employment actions concerning Plaintiff. His conduct is attributable to Defendant to the extent permitted by law.

59. Alternatively, as to Mr. Collazo and any conduct not subject to vicarious liability, Defendant had actual or constructive notice of the harassment through Plaintiff's complaints and failed to take prompt and effective remedial action.

60. Defendant's failure to implement effective corrective measures, its refusal to separate Plaintiff from the alleged harassers' authority or proximity, and its return-or-termination directive caused working conditions so intolerable that Plaintiff was constructively discharged on or about February 24, 2025.

61. Plaintiff's constructive discharge was a tangible and adverse employment action resulting from the unlawful gender-based sexual harassment.

62. As a direct and proximate result, Plaintiff suffered and continues to suffer compensable damages.

63. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights by failing to take effective corrective action despite actual notice of her complaints.

64. Plaintiff is entitled to all legal and equitable relief available under Title VII.

**COUNT II**
**GENDER-BASED HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII**

65. Plaintiff realleges and incorporates paragraphs 1 through 52 as though fully set forth herein.

66. Plaintiff is female and a member of a class protected by Title VII.

67. Plaintiff was subjected to repeated and unwelcome gender/sex-based comments, sexually suggestive remarks, sexually explicit gestures, unwanted physical contact, humiliation, and other conduct.

68. The conduct was based on Plaintiff's sex/gender, and similarly situated male employees were not subjected to the same or similar pattern of conduct.

69. Viewed individually and collectively, the conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively hostile and abusive working environment.

70. Plaintiff objected to and reported the hostile conduct, reasonably used Defendant's preventive and corrective procedures, and cooperated with Defendant's investigation.

71. Defendant had actual or constructive notice of the hostile environment but failed to take prompt and effective remedial action, allowed the alleged harassers

to remain in positions of authority, denied Plaintiff's requests for reassignment or transfer, and directed her to return to the same workplace or lose her employment.

72. Those conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign, and Plaintiff was constructively discharged on or about February 24, 2025.

73. Plaintiff's constructive discharge was the adverse employment action resulting from the hostile work environment.

74. As a direct and proximate result, Plaintiff suffered and continues to suffer compensable damages.

75. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

76. Plaintiff is entitled to all legal and equitable relief available under Title VII.

**COUNT III**
**RETALIATION IN VIOLATION OF TITLE VII**

77. Plaintiff realleges and incorporates paragraphs 1 through 52 as though fully set forth herein.

78. Plaintiff engaged in activity protected by Title VII when she opposed conduct that she reasonably and in good faith believed constituted unlawful gender-based sexual harassment and a hostile work environment, made verbal and written

complaints, requested protection from further harassment and retaliation, and participated in Defendant's investigation.

79. Defendant knew of Plaintiff's protected activity because she complained directly to supervisory and Human Resources personnel, submitted a written complaint, and participated in Defendant's investigation.

80. After Plaintiff engaged in protected activity, Defendant failed to provide an effective means for her to return to work outside the authority or proximity of the alleged harassers, denied her requests for reassignment or transfer, and directed her to return to the same workplace or lose her employment; thus, constructively discharging her on or about February 24, 2025.

81. Plaintiff's constructive discharge was a materially adverse employment action that would dissuade a reasonable employee from reporting or opposing discrimination or participating in an investigation.

82. A causal connection exists between Plaintiff's protected activity and her constructive discharge because the return-or-termination directive, denial of alternatives, and separation occurred during and immediately after Defendant's investigation of her complaints.

83. Defendant's stated reasons were pretextual because Plaintiff wished to remain employed, requested available alternatives that would permit her to continue

working, and declined to return only after Defendant failed to implement effective measures protecting her from further harassment and retaliation.

84. As a direct and proximate result of Defendant's retaliation and Plaintiff's constructive discharge, Plaintiff suffered and continues to suffer compensable damages.

85. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights despite actual knowledge of her protected activity.

86. Plaintiff is entitled to all legal and equitable relief available under Title VII.

**COUNT IV**
**GENDER (SEX) HARASSMENT**
**FLORIDA CIVIL RIGHTS ACT, FLA. STAT. §§ 760.01–760.11**

87. Plaintiff realleges and incorporates paragraphs 1 through 52 as though fully set forth herein.

88. Plaintiff is female and a member of a class protected by the FCRA.

89. Mr. Serrano and Mr. Collazo subjected Plaintiff to unwelcome gender/sex-based comments, sexually suggestive remarks, sexually explicit gestures, unwanted physical contact, and other conduct because of her gender.

90. The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. Similarly situated male employees were not subjected to the same or similar pattern of conduct.

91. Plaintiff subjectively regarded the conduct as unwelcome, objected to it, directed that it be stopped, reported it verbally and in writing, and participated in Defendant's investigation.

92. Mr. Serrano exercised supervisory authority over Plaintiff's work assignments and working conditions and, upon information and belief, possessed or effectively exercised authority to recommend, authorize, or effect tangible employment actions concerning Plaintiff. His conduct is attributable to Defendant to the extent permitted by law.

93. Alternatively, as to Mr. Collazo and any conduct not subject to vicarious liability, Defendant had actual or constructive notice of the harassment but failed to take prompt and effective remedial action.

94. Defendant allowed the alleged harassers to remain in positions of authority, failed to permanently separate Plaintiff from them, denied her requests for reassignment or transfer, and required her to return to the same workplace or lose her employment.

95. Defendant's failure to implement effective corrective measures, its refusal to separate Plaintiff from the alleged harassers' authority or proximity, and its return-or-termination directive caused working conditions so intolerable that Plaintiff was constructively discharged on or about February 24, 2025.

96. Plaintiff's constructive discharge was a tangible and adverse employment action resulting from the unlawful gender-based sexual harassment.

97. As a direct and proximate result, Plaintiff suffered and continues to suffer compensable damages.

98. Defendant acted with malice or reckless indifference to Plaintiff's protected rights under the FCRA by failing to take effective corrective action despite actual notice of her complaints.

99. Plaintiff is entitled to all legal and equitable relief available under the Florida Civil Rights Act.

**COUNT V**
**GENDER (SEX) HOSTILE WORK ENVIRONMENT**
**FLORIDA CIVIL RIGHTS ACT, FLA. STAT. §§ 760.01–760.11**

100. Plaintiff realleges and incorporates paragraphs 1 through 52 as though fully set forth herein.

101. Plaintiff is female and a member of a class protected by the FCRA.

102. Plaintiff was subjected to repeated and unwelcome gender/sex-based comments, sexually suggestive remarks, sexually explicit gestures, unwanted physical contact, humiliation, and other conduct.

103. The conduct was based on Plaintiff's sex/gender, and similarly situated male employees were not subjected to the same or similar pattern of conduct.

104. Viewed individually and collectively, the conduct to which Plaintiff was subjected by Mr. Serrano and Mr. Collazo was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively hostile and abusive work environment.

105. Plaintiff objected to and reported the harassment, reasonably used Defendant's preventive and corrective procedures, and cooperated with Defendant's investigation.

106. Mr. Serrano exercised supervisory authority over Plaintiff's work assignments and working conditions and, upon information and belief, possessed or effectively exercised authority to recommend, authorize, or effect tangible employment actions concerning Plaintiff. His conduct is attributable to Defendant to the extent permitted by law.

107. Alternatively, as to Mr. Collazo and any conduct not subject to vicarious liability, Defendant had actual or constructive notice of the harassment but failed to take prompt and effective remedial action.

108. Defendant had actual or constructive notice of the hostile work environment but failed to take prompt and effective remedial action, allowed the alleged harassers to remain in positions of authority, denied Plaintiff's requests for reassignment or transfer, and directed her to return to the same workplace or lose her employment.

109. Those conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign, and Plaintiff was constructively discharged on or about February 24, 2025.

110. Plaintiff's constructive discharge was the adverse employment action resulting from the hostile work environment.

111. As a direct and proximate result, Plaintiff suffered and continues to suffer compensable damages.

112. Defendant acted with malice or reckless indifference to Plaintiff's rights as protected by the FCRA.

113. Plaintiff is entitled to all legal and equitable relief available under the Florida Civil Rights Act.

**COUNT VI**
**RETALIATION**
**FLORIDA CIVIL RIGHTS ACT, FLA. STAT. §§ 760.01–760.11**

114. Plaintiff realleges and incorporates paragraphs 1 through 52 as though fully set forth herein.

115. Plaintiff engaged in activity protected by the FCRA when she opposed conduct that she reasonably and in good faith believed constituted unlawful gender-based sexual harassment and a hostile work environment, made verbal and written complaints, requested protection from further harassment and retaliation, and participated in Defendant's investigation.

116. Defendant knew of Plaintiff's protected activity because she complained directly to supervisory and Human Resources personnel, submitted a written complaint, and participated in Defendant's investigation.

117. After Plaintiff engaged in protected activity, Defendant failed to provide an effective means for her to return to work outside the authority or proximity of the alleged harassers, denied her requests for reassignment or transfer, and directed her to return to the same workplace or lose her employment; thus, constructively discharging her on or about February 24, 2025.

118. Plaintiff's constructive discharge was a materially adverse employment action that would dissuade a reasonable employee from opposing discrimination or participating in an investigation.

119. A causal connection exists between Plaintiff's protected activity and her constructive discharge because the return-or-termination directive, denial of alternatives, and separation occurred during and immediately after Defendant's investigation of her complaints.

120. Defendant's stated reasons were pretextual because Plaintiff wished to remain employed, requested alternatives that would permit her to continue working, and declined to return only after Defendant failed to implement effective measures protecting her from further harassment and retaliation.

121. As a direct and proximate result of Defendant's retaliation and Plaintiff's constructive discharge, Plaintiff suffered and continues to suffer compensable damages.

122. Defendant acted with malice or reckless indifference to Plaintiff's rights protected by the FCRA despite actual knowledge of her protected activity.

123. Plaintiff is entitled to all legal and equitable relief available under the Florida Civil Rights Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award the following relief:

a. A trial by jury on all issues so triable,

b. Reinstatement to her former position or reemployment in a comparable position, or front pay if reinstatement or reemployment is not feasible,

c. Back pay, lost wages, lost benefits, lost earning capacity, and all other equitable monetary relief available under Title VII,

d. Compensatory damages, including damages for emotional distress, mental anguish, humiliation, embarrassment, inconvenience, anxiety, and loss of enjoyment of life,

e. Punitive damages as permitted by 42 U.S.C. § 1981a,

f. Reasonable attorneys' fees, litigation expenses, and taxable costs under 42 U.S.C. § 2000e-5(k),

g. Prejudgment and post-judgment interest as permitted by law,

h. All damages and relief recoverable under the FCRA, including back pay, front pay or reinstatement as authorized by law, compensatory damages, prejudgment interest, taxable costs, and reasonable attorneys' fees under Fla. Stat. § 760.11, and

i. Such other legal or equitable relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 19th day of August 2026.

By: */s/ Alison Breiter, Esquire*
Alison Breiter, Esquire
LEAD COUNSEL
Florida Bar No. 1003413
Farah and Farah, P.A.
5100 West Kennedy Boulevard
Suite 250
Tampa, FL 33609
Telephone/Facsimile: 813-666-1179
Email: Abreiter@farahandfarah.com
Email: Murban@farahandfarah.com
Email: Jkosanovich@farahandfarah.com
*Attorneys for Plaintiff*